**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-2166

CURTIS COX,

                Plaintiff - Appellee,

      v.

SNAP, INC.,

                Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:16-cv-00009-LO-IDD)

Argued: May 10, 2017                    Decided: June 13, 2017

Before MOTZ, AGEE, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Agee and Judge Diaz joined.

**ARGUED:** Anand Vijay Ramana, MCGUIREWOODS, LLP, Washington, D.C., for Appellant. Nicholas M. DePalma, VENABLE, LLP, Tysons Corner, Virginia, for Appellee. **ON BRIEF:** Elizabeth A. Hutson, MCGUIREWOODS, LLP, Washington, D.C., for Appellant. Randall K. Miller, Kevin W. Weigand, Taylor S. Chapman, VENABLE, LLP, Tysons Corner, Virginia, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

In this diversity action for breach of contract, SNAP, Inc. appeals from the grant of summary judgment to Curtis Cox. The district court concluded that SNAP breached its contract with Cox by refusing to repurchase stock options the contract granted to him and awarded Cox $637,867.42 in damages, the full value of his options plus interest. On appeal, SNAP argues that the contract itself did not convey options to Cox but merely included an executory promise to issue those options, which SNAP never in fact issued. SNAP also challenges the calculation of damages. For the reasons that follow, we affirm the judgment of the district court.

I.

In 2006, SNAP, a Virginia corporation, sought to expand its business in the field of federal procurement by contracting with Curtis Cox, a Maryland resident and the president of $C^2$ Technologies, an established government contracting firm. On January 12, 2006, the parties executed a memorandum of understanding in which Cox agreed "to promote and market [SNAP] in exchange for obtaining an equity stake" in the company. For purposes of this appeal, there is no dispute that the memorandum constitutes a binding contract.[1]

---

[1] During oral argument, SNAP suggested that the contract failed for indefiniteness as to Cox's consideration. However, SNAP has waived this contention by failing to advance it before the district court. *See Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 753 (4th Cir. 2016) ("Issues raised for the first time on appeal are generally not considered by this Court.").

Under the terms of this contract, Cox and C$^2$ Technologies agreed to provide various forms of assistance to SNAP. Among other things, they agreed to use their best efforts to help SNAP obtain specific contracts, to consider SNAP for any potential leads, and to provide SNAP with approximately $240,000 worth of marketing support and assistance.

In return, the contract provides that "[o]n January 12, 2006," the same day the parties executed the contract, SNAP "will issue a non-qualified stock option to Mr. Cox granting him the right to purchase 308 shares, representing five (5%) percent of the total authorized shares of stock of [SNAP]." The contract announces SNAP's intention to execute a stock split, under which Cox's options would increase proportionally. It gives SNAP the right to re-purchase Cox's options at any time after January 1, 2008 and gives Cox the right to require SNAP to repurchase his options — a "put option" — any time after January 1, 2011. The repurchase price is payable to Cox "over a five-year period with interest at the then current prime rate."

Cox attempted to exercise his put option on March 18, 2011 in a letter to SNAP President Navneet Gupta. The parties discussed but never came to a resolution regarding Cox's request. On October 6, 2015, Cox sent Gupta a second letter demanding that SNAP pay him the full value of his options. On October 9, 2015, Gupta replied that "[SNAP] owes you nothing."

A month later, in November 2015, Cox filed suit for breach of contract against SNAP in Virginia state court. SNAP removed the case to the district court for the Eastern District of Virginia. After removal, Cox filed an amended complaint alleging

3

breach of contract for failure to repurchase, breach of contract for failure to issue his options, and quantum meruit.

In August 2016, the parties filed cross-motions for summary judgment. SNAP contended that the contract did not grant Cox any stock options but merely memorialized SNAP's promise to issue the options in the future. As such, issuing the options was a condition precedent to its obligation to repurchase those options from Cox. In support of its interpretation of the contract, SNAP relied on the future-tense language in the contract's key terms, particularly the phrase "*will issue* a non-qualified stock option" in paragraph 1, along with references to the "necessary documentation" SNAP would prepare after the parties executed the contract.

Cox contended that the contract itself issued the options and therefore gave him the right to require SNAP to repurchase those options. Cox relied on three arguments. First, paragraph 1 of the contract required SNAP to issue the options on January 12, 2006 — the very same day the parties executed the contract. Thus, Cox argued, even if this language were ambiguous, he should prevail in accordance with *contra proferentem*, the rule that courts should construe ambiguous contractual terms against the drafter (here SNAP) under certain circumstances. Second, Cox relied on the general presumption against construing a contract to create conditions precedent and argued that the parties never intended the "will issue" language to serve as a condition precedent to Cox's put option. Third, Cox argued that, under the prevention doctrine, SNAP waived any such condition precedent by refusing to issue the stock options.

The district court granted summary judgment to Cox. The court reasoned that the plain language of the contract showed that SNAP issued the stock options to Cox and that the contract did not require any further steps as a condition precedent before those options issued. In the alternative, the court held that the language at issue was patently ambiguous and must therefore be construed against SNAP. Applying the contract's formula for calculating the value of Cox's options and the interest owed, the court awarded Cox a total of $637,867.42 in damages. SNAP timely noted this appeal.

We review a district court's grant of summary judgment *de novo*. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). The parties agree that Virginia law governs our review in this diversity case.

II.

We turn first to liability. The parties dispute whether the contract itself conveyed stock options to Cox or merely obligated SNAP to issue those options at some point in the future.

If, as Cox maintains, the contract conveyed stock options to him, SNAP clearly breached the contract by refusing to repurchase them when Cox exercised his put option. For there is no dispute that Cox otherwise exercised his put option in accordance with the

5

terms of the agreement, and SNAP has not preserved any defense for its refusal to repurchase Cox's options.[2]

However, SNAP maintains that the contract did not convey stock options to Cox. Rather, according to SNAP, in the contract it merely *promised* to issue stock options to Cox, and the contract therefore made the issuance of stock options a condition precedent to SNAP's obligation to repurchase those options. SNAP contends that because it never issued those options, it never incurred the obligation to repurchase them from Cox. SNAP maintains that its refusal to issue the stock options was the only conceivable basis for Cox's lawsuit, and the limitations period for this claim expired well before November 2015, when Cox filed his initial complaint in state court. Thus, in SNAP's view, the statute of limitations bars Cox's only potentially meritorious claim.

SNAP has taken a self-defeating position. Even if issuing the stock options was a condition precedent to SNAP's obligation to repurchase, SNAP has excused that condition by breaching its promise to issue the options, and so the prevention doctrine dooms its case.[3] Under the prevention doctrine, "if a promisor prevents or hinders

_____

[2] In its answer to Cox's complaint, SNAP asserted that Cox committed the first material breach by failing to provide the assistance he promised. However, SNAP failed to advance this argument in its summary judgment papers and has therefore waived this defense. *See, e.g.*, *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived. 'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'" (quoting *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986))).

[3] Because SNAP cannot prevail under its own interpretation of the contract, we need not address Cox's other arguments.

fulfillment of a condition to his performance, the condition may be waived or excused."

*Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 725 (4th Cir. 2000) (applying Virginia law); *see also* Restatement (Second) of Contracts § 245 (Am. Law Inst. 1981); Richard A. Lord, Williston on Contracts § 39:7 (4th ed.), Westlaw (database updated May 2017). For the prevention doctrine to apply, Cox need only show that SNAP materially contributed to the non-occurrence of the condition. *See Moore*, 207 F.3d at 725.

Virginia has recognized the prevention doctrine for many decades. In *Parrish v. Wightman*, the Supreme Court of Virginia adopted the following formulation of the rule:

> Where a contract is performable on the occurrence of a future event there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, *particularly where it is dependent in whole or in part on his own act*; and, where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability.

34 S.E.2d 229, 232 (Va. 1945) (emphasis added) (quoting 17 C.J.S. Contracts § 468 [now § 707]). Under *Parrish*, the relevant inquiry is whether a condition precedent failed to occur "because of any fault upon the part of the [promisor]." *Id.*

SNAP controlled whether the stock options issued, and, even under its own interpretation, it had a contractual obligation to issue those options. By refusing to do so, SNAP plainly forfeited its right to rely on their issuance as an unfulfilled condition precedent to its obligation to repurchase Cox's options. When a condition in a contract fails to occur solely because a party breached one of its other obligations in the very same

7

contract, there is no doubt that the party caused the non-occurrence for the purposes of the prevention doctrine. As the Restatement explains:

> Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him . . . may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition *or by taking affirmative steps to cause its occurrence. . . . The rule stated in this Section only applies, however, where the lack of cooperation constitutes a breach, either of a duty imposed by the terms of the agreement itself or of a duty imposed by a term supplied by the court.* There is no breach if the risk of such a lack of cooperation was assumed by the other party or if the lack of cooperation is justifiable.

Restatement (Second) of Contracts § 245 cmt. a (Am. Law Inst. 1981) (emphasis added).

This comports with the Supreme Court of Virginia's reasoning in *Parrish* that the implied agreement not to impede the occurrence of a condition applies particularly when the occurrence or non-occurrence of the condition depends entirely on the promisor's own conduct. *See Parrish*, 34 S.E.2d at 232.

According to SNAP, the prevention doctrine does not apply here because it only withheld the options after Cox first materially breached the contract. Of course, as noted above, SNAP has waived this first material breach defense by failing to advance it in seeking summary judgment. *See supra* note 2. Moreover, even if SNAP had preserved the defense, it would offer no help. On SNAP's own reading, the contract required SNAP to issue the stock options to Cox on the same day the parties executed the contract. Thus, SNAP materially breached the contract by failing to issue those stock options, well before Cox could have plausibly breached his obligation to provide the promotion and marketing assistance he had promised.

SNAP also argues that the prevention doctrine applies only when a party affirmatively obstructs a condition from occurring, not when it merely refrains from bringing the condition about. This asserted limitation does not stand up to scrutiny. Indeed, the lone opinion on which SNAP relies is unreported and bears no resemblance to the facts of this case. *Charlie Norfolk Ctr. Assocs., L.P. v. Norfolk Redevelopment & Hous. Auth.*, 285 F. App'x 80 (4th Cir. 2008). And it simply reiterates that "a condition precedent to a contract is excused when the promisor *prevents or hinders* the occurrence of the condition, and the condition would have occurred in the absence of such prevention or hindrance." *Id.* at 84 n.7 (emphasis added). Both the Supreme Court of Virginia and the Restatement have made clear that a promisor prevents or hinders the occurrence of a condition when it wrongfully refuses to cooperate, either by actively interfering with the occurrence of a condition or by withholding cooperation the promisor was obligated to give.

Accordingly, when a party materially contributes to the non-occurrence of a condition precedent by failing to bring that condition about, the condition is excused if the party's inaction is wrongful under the circumstances. Violation of a contractual duty is plainly wrongful for the purposes of the prevention doctrine. *See* Restatement (Second) of Contracts § 245 cmt. a (Am. Law Inst. 1981). Here, even assuming SNAP's reading of the contract is correct, there is no doubt that SNAP had an obligation to bring about the condition it now tries to hide behind. Because it refused to do so with no justification or excuse, the prevention doctrine applies. *See NLRB v. Local 554, Graphic Commc'ns Int'l Union*, 991 F.2d 1302, 1307–08 (7th Cir. 1993) (excusing a condition

9

precedent that an international union approve a collective bargaining agreement because the local union failed to seek such approval).

Thus, even if we read the contract as merely incorporating a promise to issue stock options, SNAP cannot avoid liability to Cox.

III.

SNAP also challenges the district court's calculation of damages. The contract stipulates the formula for calculating the repurchase price of Cox's options. Paragraph 9(b) states that:

> The price shall be determined based on the excess of the then fair market value of [SNAP], with such value determined based on .8 times [SNAP's] annual sales during the most recently preceding twelve-month period, over the initial strike price.

Paragraph 3 establishes the formula for calculating the initial strike price of Cox's options:

> For purposes of determining the strike price of the options issued pursuant to paragraph 1, the value of [SNAP] will be based on a valuation of .8 times [SNAP's] sales in calendar year 2005. This amount is estimated to be approximately $12,000,000.

Thus, as the parties agree, the value of Cox's options may be expressed as: ((80% of SNAP's 2010 sales) – (80% of SNAP's 2005 sales)) x 0.05.

Based on the unrebutted expert report submitted by Cox, the district court found that SNAP's 2010 sales were $18,365,265 and that its 2005 sales were $4,938,584. Applying the above formula, the court found that Cox's options were worth $537,067.25. Under paragraph 10(c) of the contract, this amount was payable to Cox "over a five-year

period with interest at the then current prime rate," which was 3.25%. Adding the interest to the value of Cox's options, the district court found that Cox's total damages were $637,867.42.

SNAP concedes that the district court used the proper formula to calculate damages. On appeal, it contends only that the district court erred when it found that SNAP's 2005 sales were $4,938,584. SNAP admits that this figure accurately reflects its *actual* 2005 sales, but it contends that its actual sales are immaterial because the contract *stipulates* that the 2005 sales were $12,000,000. SNAP relies on the language in paragraph 3 of the contract stating that "[t]his amount is *estimated* to be *approximately* $12,000,000." According to SNAP, what appears on a plain reading of the text to be a rough approximation is actually a conclusive stipulation.

We disagree. The contract provides that the value of Cox's options depends on the growth in SNAP's value from 2005 to the time that Cox finally exercises his put option. Under these circumstances, it stands to reason that the parties would have established a rough benchmark against which they could track the value of Cox's options. Moreover, there are at least three problems with reading the $12,000,000 estimate as a stipulation.

First, the ordinary meaning of "estimate" connotes a "rough or approximate calculation," not a fixed assumption. *Estimate*, Webster's Third New International Dictionary 779 (1993). Common sense recommends we adhere to this meaning, since the parties *estimated* that the amount described is "approximately" $12,000,000. Second, it is not clear whether "[t]his amount" refers to SNAP's 2005 sales or an estimate of the

11

initial strike price, that is, 80% of SNAP's sales. This unresolved ambiguity suggests that the parties did not mean for the estimate to serve as a stipulation. Third, and most puzzling of all, SNAP's reading would leave the parties and the court no way to establish a concrete strike price, and therefore no way to determine the value of Cox's options. At most, the contract stipulates that SNAP's 2005 sales were *approximately* $12,000,000. This would be a practically meaningless stipulation, because one is left to wonder as to the value of "approximately" $12,000,000 or "approximately" 80% of $12,000,000. For the purposes of establishing a strike price, it would be exceedingly strange for the parties to stipulate to an indeterminate figure. We cannot read the contract in this way. Instead, we agree with the district court's far more natural reading that "sales in calendar year 2005" refers to SNAP's actual sales in 2005.

The parties agree that SNAP's actual sales in 2005 were $4,938,584, and SNAP has raised no other challenge to the district court's application of the contractual formula for determining the value of Cox's stock options. Accordingly, we find no error in the district court's award of damages.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

12