**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2034**

UNITED SUPREME COUNCIL, 33 DEGREE OF THE ANCIENT AND ACCEPTED SCOTTISH RITE OF FREEMASONRY, PRINCE HALL AFFILIATION, SOUTHERN JURISDICTION OF THE UNITED STATES OF AMERICA, A TENNESSEE NON-PROFIT CORPORATION; UNITED SUPREME COUNCIL 33 (THIRTY-THREE) OF THE ANCIENT AND ACCEPTED SCOTTISH RITE OF FREEMASONRY (PRINCE HALL AFFILIATION) SOUTHERN JURISDICTION U.S., GRAND ORIENT AT WASHINGTON, DISTRICT OF COLUMBIA, A DISTRICT OF COLUMBIA NON-PROFIT CORPORATION;

          Plaintiffs - Appellants,

     v.

UNITED SUPREME COUNCIL OF THE ANCIENT ACCEPTED SCOTTISH RITE FOR THE 33 DEGREE OF FREEMASONRY, PRINCE HALL AFFILIATED, A DISTRICT OF COLUMBIA NON-PROFIT CORPORATION; RALPH SLAUGHTER; JOSEPH A. WILLIAMS; MICHAEL A. PARRIS,

          Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:16−cv−01103−LO−IDD)

Argued: September 18, 2019          Decided: October 30, 2019

Before MOTZ, HARRIS, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion. Judge Harris wrote the opinion, in which Judge Motz and Judge Quattlebaum joined.

**ARGUED:** Richard Carnell Baker, BAKER SIMMONS, ATTORNEYS AT LAW, Washington, D.C., for Appellants. Jalil Devon Dozier, DOZIER LAW FIRM PLLC, Washington, D.C., for Appellees. **ON BRIEF:** Amanda R. Ledford, Ryan C. Weir, DOZIER LAW FIRM PLLC, Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

This case stems from an internal dispute within a fraternal order of Freemasons, which caused a faction of the order to break off and start its own masonic organization. The original organization – the plaintiffs here – are United Supreme Council, 33 Degree of the Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, Southern Jurisdiction of the United States ("USC-SJ I") and its Washington, DC-based predecessor, United Supreme Council 33 (Thirty-Three) of the Ancient and Accepted Scottish Rite of Freemasonry (Prince Hall Affiliation) Southern Jurisdiction U.S.A., Grand Orient at Washington, District of Columbia ("Grand Orient"). These two plaintiffs brought suit against the new organization, which had incorporated under the name United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, Southern Jurisdiction, Prince Hall Affiliated, as well as three individual defendants, former members who had defected to the new organization (together, "USC-SJ II defendants" or "defendants"). The plaintiffs' theory is straightforward: Their suit asserted various claims that, at bottom, allege that USC-SJ II was unlawfully holding itself out as an extension of the plaintiffs' organization.

Two decisions of the district court are now on appeal. First, the district court granted the defendants' motion to dismiss the plaintiffs' fraud claim. On the undisputed record facts, the district court concluded, the plaintiffs had not established reliance on any of the defendants' alleged misstatements as necessary for a fraud claim. We agree that the plaintiffs did not adequately plead reliance, and affirm. Second, the district court granted summary judgment in favor of the defendants as to the remaining claims, holding that both

3

USC-SJ I and Grand Orient lacked standing and that, in the alternative, their claims would fail on the merits. Although we believe the district court erred in holding that Grand Orient lacked standing, we agree with its resolution on the merits and affirm the court's judgment on those grounds.

**I.**

**A.**

The defendants in this case were members of the plaintiffs' organization when, in 2015, they learned of allegations that the organization's leadership was misappropriating funds. In response, they attempted to gain control of the organization, voting to replace the existing leadership at an annual meeting. When this effort fell short, the defendants withdrew from the organization altogether. Six days later, they incorporated a new organization in the District of Columbia under the name "United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, Southern Jurisdiction, Prince Hall Affiliated," J.A. 106 – a name that the plaintiffs assert is undeniably similar to their own. Afterwards, the plaintiffs allege, the defendants attempted to induce members to switch allegiances, in part by misrepresenting their splinter group as a legitimate extension of the plaintiffs' organization.

The plaintiffs, USC-SJ I and Grand Orient, then sued the USC-SJ II defendants for their purported misrepresentations and related wrongful acts. Their complaint asserted multiple claims, including state common-law claims for fraud, tortious interference with contract, and unfair competition, and federal claims for copyright and trademark

4

infringement.  Because much of the complained-of conduct occurred in Virginia, in what the plaintiffs allege was an effort to target their Virginia membership, the plaintiffs filed their complaint in federal district court in that state.

**B.**

The USC-SJ II defendants first moved to dismiss the plaintiffs' complaint for failure to state a claim.  The district court granted the motion with respect to the fraud claim, finding that the plaintiffs had failed to plausibly allege the legal elements of fraud.  *United Supreme Council, 33 Degree of the Ancient & Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, S. Jurisdiction of the U.S. v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, S. Jurisdiction, Prince Hall Affiliated*, No. 1:16-CV-1103, 2017 WL 1179155, at \*4–5 (E.D. Va. Mar. 28, 2017) (*United Supreme Council I*).[1]  Under Virginia law, the district court explained, the plaintiffs' state law claim for fraud requires:  (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.  *See id.* at \*4 (citing *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218 (2005)).  The district court questioned whether any of those elements had been satisfied, but focused particularly on the reliance prong, concluding that the plaintiffs "do not allege at any point that they believed in the

---

[1] The district court also dismissed the plaintiffs' claims for conspiracy and conversion.  The plaintiffs do not appeal those dismissals, and we do not discuss those claims further.

legitimacy of USC-SJ II, and therefore they could not have reasonably relied on [the USC-SJ II defendants'] assertions of authority." *Id.* at \*5.

Following months of discovery, the USC-SJ II defendants filed a motion for summary judgment, seeking judgment in their favor on the remaining claims and also challenging the standing of USC-SJ I and Grand Orient to bring those claims. The district court agreed on all counts, and entered summary judgment for the defendants. *United Supreme Council, 33 Degree of the Ancient & Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, S. Jurisdiction of the U.S. v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, S. Jurisdiction, Prince Hall Affiliated*, 329 F. Supp. 3d 283, 288–96 (E.D. Va. 2018) (*United Supreme Council II*).

First, the district court held that both USC-SJ I and Grand Orient lacked Article III standing to bring their claims. The district court agreed with the defendants that USC-SJ I had failed to establish that it was either a natural person or a legal entity and that, in the absence of such legal existence, USC-SJ I had no standing to bring this suit. *Id*. at 289. Though the complaint alleged that USC-SJ I was incorporated under the laws of Tennessee, as the court explained, the plaintiffs had acknowledged that this allegation was mistaken. *Id.* at 288. That put USC-SJ I in an "unusual position" in which "they ha[d] admitted that they are not a Tennessee corporation, as plead[ed] in the operative Complaint, but they ha[d] made no showing as to any other legal existence." *Id*. In the district court's view, this lack of legal existence was determinative: Because USC-SJ I failed to establish any legal existence, "it [could] have no stake in the outcome of this case." *Id*. at 289.

6

The defendants argued that Grand Orient, too, lacked standing, though for a different reason. There was no question that Grand Orient – unlike USC-SJ I – was incorporated as alleged in the complaint, under the laws of the District of Columbia. *Id.* But as the plaintiffs acknowledged, at the time it filed this suit, Grand Orient was administratively dissolved: Its corporate charter was revoked in 2012, and it remained in revoked status until September of 2016 – after this litigation was commenced in August of 2016. *Id.* at 289. The district court noted that the "capacity of a corporation to sue or to be sued is determined by its state's law of incorporation," and explained that under District of Columbia law, "when Plaintiff Grand Orient's charter was revoked, it continued its existence but was barred from carrying on any activities or affairs except as necessary for winding up its affairs." *Id.* at 289–90. Because it was not an "active corporation" during that time, the court concluded, Grand Orient lacked Article III standing to "sue for an injury that allegedly occurred during its period of dissolution." *Id.* at 290.

The district court then went on to hold in the alternative that if USC-SJ I or Grand Orient did have standing, summary judgment in favor of the defendants still would be appropriate. *Id.* at 291. The court began with the plaintiffs' claim for tortious interference with contract, which requires the plaintiffs to demonstrate, first, the existence of a valid contractual relationship. *Id.* Because the plaintiffs merely asserted, without citation, that USC-SJ I's "Constitution" constituted a valid contract between the organization and its members, the district court determined that they had failed to meet their burden. *Id.*

As to the remaining claims – copyright infringement, trademark infringement, and unfair competition – the district court held that they either had been abandoned as a result

7

of the plaintiffs' failure to address them in briefing, or were insufficiently alleged in the operative complaint. *Id.* at 291–96. And in any event, the district court concluded, each of those claims lacked merit. *Id.*

This timely appeal followed.

## II.

On appeal, we review *de novo* the district court's determination that USC-SJ I and Grand Orient lack standing. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 342 (4th Cir. 2013). We also review the district court's grant of a motion to dismiss and its grant of summary judgment *de novo*, *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (summary judgment); *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (motion to dismiss), and may affirm on any grounds supported by the record, *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 75 n.13 (4th Cir. 2016).

## A.

We start with the district court's determination that USC-SJ I and Grand Orient lack standing to bring this action. With respect to USC-SJ I, we need not say much. The parties agree that on this record and for purposes of this action, USC-SJ I has no legal existence. It follows, the district court held, that USC-SJ I lacks standing to sue, and the plaintiffs do not argue otherwise on appeal, instead relying solely on Grand Orient's purported standing

to satisfy Article III's requirements. We therefore focus our attention on the question of Grand Orient's standing to sue.[2]

We begin where the district court did: with the question of capacity to sue or be sued, governed by District of Columbia law. *See United Supreme Council II*, 329 F. Supp. 3d at 289. The relevant statutory provision dictates that "[a] domestic filing entity that is dissolved administratively continues its existence as an entity, but shall not carry on any activities or affairs except as necessary to wind up its activities and affairs . . . or to apply for reinstatement . . . ." D.C. Code § 29-106.02(c). In light of this provision, as the district court suggested, *see United Supreme Council II*, 329 F. Supp. 3d at 289–90, there may be questions as to whether Grand Orient had the capacity to sue when it did: Grand Orient filed suit in August of 2016, during its period of administrative dissolution, and it is not obvious, at least, that this action fits within the statutory exception for "wind[ing] up" affairs. But that issue is not before us. The lack of capacity to sue is an affirmative defense that must be raised in an answer, and USC-SJ II's failure to do that amounts to waiver. Fed. R. Civ. P. 9(a); *see United Supreme Council II*, 329 F. Supp. 3d at 289 (discussing waiver of legal capacity claim as to USC-SJ I).

---

[2] Ordinarily, courts that find no Article III standing dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, *see Abbott v. Pastides*, 900 F.3d 160, 175 n.8 (4th Cir. 2018), rather than granting summary judgment, as the district court did here. We need not determine, however, whether the district court intended its holding as jurisdictional, because – as outlined below – we agree with the plaintiffs that Grand Orient has standing to bring identical claims for identical relief, and "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement" and give us jurisdiction over this case. *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *see also Bostic v. Schaefer*, 760 F.3d 352, 370–71 (4th Cir. 2014).

9

For the district court, however, that was not the end of the matter. In the district court's view, Grand Orient's administrative dissolution affected not only its capacity to sue, but also its Article III standing. Because Grand Orient's alleged injuries occurred during its period of administrative dissolution, the court held, Grand Orient could not satisfy the Article III requirement of injury in fact. *United Supreme Council II*, 329 F. Supp. 3d at 290. Nor could Grand Orient's subsequent reinstatement cure the problem; the D.C. Code's reinstatement provision could not be read to allow the plaintiffs to "enjoy a benefit derived from acts taken during the period of [administrative dissolution]." *Id.* (citing D.C. Code § 29-106.03(d)); *see also Mollan v. Torrance*, 22 U.S. 537 (9 Wheat.) 539 (1824) ("[T]he jurisdiction of the [c]ourt depends upon the state of things *at the time of the action brought*.") (emphasis added).

We cannot agree with the district court's standing analysis. The court's determination that Grand Orient lacks standing, it seems to us, conflates two distinct concepts: a party's capacity to sue and be sued, and this court's Article III jurisdiction. A corporation's capacity to sue or be sued is its "personal right to litigate in a federal court," 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1542 (3d ed.), and is determined by its state's law of incorporation, *see* Fed. R. Civ. P. 17(b)(2). Article III standing, in contrast – with its familiar requirement that a party invoking the jurisdiction of a federal court seek relief for a concrete, particularized injury, fairly traceable to the challenged conduct, and likely to be redressed by a favorable judicial decision, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) – "is a question of federal law, not state law," *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). To establish Article

10

III injury, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). Capacity to sue, on the other hand, does *not* ask whether a party has been injured; it merely determines whether that party is entitled to enforce a particular right through litigation.

Courts have recognized this distinction, clarifying that an absence of capacity to sue under state law does not by itself deprive a litigant of Article III standing, nor deprive a federal court of jurisdiction. On the contrary, "[t]he question of a litigant's capacity or right to sue or to be sued generally does not affect the subject matter jurisdiction of the district court." *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 50 (9th Cir. 1972); *see also Md. People's Counsel v. FERC*, 760 F.2d 318, 319–20 (D.C. Cir. 1985) (Scalia, J.) (holding that state agency's authorization to bring suit under state law and agency's standing to sue were "separate question[s]"); *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 65 (D.D.C. 2015) (holding that plaintiff was "not disqualified from having Article III standing on the basis of its purported lack of capacity").

Here, on the other hand, the district court merged these two concepts, assuming that a corporation dissolved under D.C. law cannot suffer an injury in fact cognizable under Article III. *United Supreme Council II*, 329 F. Supp. 3d 283, 289–90. We see no basis for that assumption. First, taken to its logical conclusion, it would lead to absurd results. Imagine that an administratively dissolved corporation – which, under D.C. law, "continues its existence as an entity," D.C. Code § 29-106.02(c) – was the victim of a burglary, resulting in the loss of its entire financial reserve. If dissolved corporations could not suffer

11

injury in fact under Article III, then this loss would be wholly without remedy in federal court. And that would be so even though the dissolved corporation likely would have the *capacity* to sue under local law, as recovery of its assets would facilitate the winding up of its affairs. *See id.*

Second, and most importantly, nothing in Article III's well-known injury, causation, and redressability trifecta demands this result. Here, applying the proper Article III framework, the standing analysis is straightforward. Grand Orient's asserted injury is clear: It argues that it has suffered economic harm and diminution in membership, which clearly constitute injury in fact. *See Nat'l Ass'n for Advancement of Colored People v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958) (upholding organizational injury of "diminished financial support and membership"). It alleges that USC-SJ II's fraudulent actions and interference with its membership contracts caused that injury. And a favorable decision, through damages or injunctive relief, could redress it. In this case, in other words, Grand Orient can make the showing demanded by Article III, quite apart from whatever limitations might be imposed by the District of Columbia Code on Grand Orient's capacity to sue.

That is not to say that the district court's concern about Grand Orient acting in contravention of D.C. Code § 29-106.02(c) is wholly immaterial to this case. On the contrary, as a number of courts have held, actions taken by a dissolved corporation that are not authorized by state law may be void as a result. *See*, *e.g.*, *Accurate Constr. Co. v. Washington*, 378 A.2d 681, 684 (D.C. 1977) (corporation's contract was void because corporation entered into the contract during revocation period, during which it lacked the

12

capacity to contract). But that determination – for example, whether a corporation had the legal capacity to enter into a contract during the period of its dissolution – is a state law question that is properly considered on the merits, separate and apart from a party's alleged injury in fact under Article III.

**B.**

Because we find that Grand Orient has standing to sue, we proceed to the merits of its claims against the USC-SJ II defendants. For the reasons that follow, we agree with the district court that Grand Orient cannot prevail.

1.

First, we agree with the district court that Grand Orient failed to state a claim for fraud. The crux of the plaintiffs' fraud claim is that the defendants falsely represented that USC-SJ II was a legitimate United Supreme Council "for the purpose of defrauding [p]laintiffs, and their Subordinate Bodies, members and/or members of the public." J.A. 125. On Grand Orient's telling, all of the USC-SJ II defendants' purported misdeeds – including misappropriating the plaintiffs' "name, likeness, rituals, emblems, practices, personal property, revenue, contributions, assets, banking accounts, benefactor lists, and intellectual property" – were undertaken "in furtherance of their scheme to deceive and confuse the public and/or defraud [p]laintiffs." J.A. 126–27.

The problem with that theory, as the district court identified, is that Grand Orient failed to allege reliance on any of the USC-SJ II defendants' purported misrepresentations, as is required to plead a fraud claim under Virginia law. *See United Supreme Council I*, 2017 WL 1179155, at *4–5. Grand Orient alleges that the defendants attempted to

13

represent themselves as a legitimate extension of the plaintiffs' organization, but offers no suggestion that it was ever misled by this attempt. To the contrary, Grand Orient specifically alleges that it was aware of "unauthorized use of [its] intellectual property" and "otherwise unlawful behavior," and that it had asked the USC-SJ II defendants to stop "[o]n myriad occasions." J.A. 119.

Grand Orient does not dispute that it failed to allege reliance. Instead, it argues that reliance is not a necessary legal element of fraud, pointing to two of our cases – *Grand Lodge of Improved, Benevolent & Protective Order of Elks of the World v. Grand Lodge, Improved, Benevolent & Protective Order of Elks of the World, Inc.*, 50 F.2d 860, 861 (4th Cir. 1931), and *Grand Lodge Improved, Benevolent, Protective Order of Elks of the World, v. Eureka Lodge No. 5, Indep. Elks*, 114 F.2d 46, 48 (4th Cir. 1940) (together, the "*Elks Lodge* cases") – for support. The *Elks Lodge* cases, however, do not stand for this proposition. To be sure, the plaintiffs in the *Elks Lodge* cases complained of the same general grievance as the plaintiffs do here: that another organization was using a name that the plaintiffs alleged was unlawfully similar to its own. But as the district court in this case correctly recognized, the *Elks Lodge* plaintiffs did not assert a legal claim for fraud at all; instead, they brought "equitable claims for injunctive relief only." *United Supreme Council I*, 2017 WL 1179155, at *4. The *Elks Lodge* cases provide no support for Grand Orient's argument that reliance is not a legal element of fraud for the straightforward reason that the cases never addressed such a claim. Despite the surface-level factual similarities, then, the *Elks Lodge* cases cannot remedy the plaintiffs' deficient fraud claim.

14

In short, because the plaintiffs failed to allege that Grand Orient relied on any of the defendants' alleged misrepresentations to its detriment – or that any of Grand Orient's members so relied[3] – they have failed to state a claim for fraud. We therefore affirm the district court's dismissal of the plaintiffs' fraud claim.

2.

We also agree with the district court that the USC-SJ II defendants are entitled to summary judgment on Grand Orient's claim for tortious interference with contract. As the district court explained, to establish tortious interference, a claimant must: (1) demonstrate the existence of a valid contractual relationship; (2) prove knowledge of the relationship by the interferor; (3) show intentional interference inducing or causing a breach of the relationship; and (4) show that it suffered damages from the interference. *See Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001). The district court held that Grand Orient failed at the threshold to establish the existence of an

---

[3] This failure to identify any harm to individual members supports the district court's conclusion that Grand Orient does not have associational standing – separate from its standing to bring suit on its own behalf – to assert a fraud claim on behalf of its members. *See United Supreme Council I*, 2017 WL 1179155, at *5 n.4. An association has standing to sue on behalf of its members only if, *inter alia*, the association's members would otherwise have standing in their own right. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). To fulfill that requirement, a party must specifically "identify members who have suffered the requisite harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). Grand Orient has not done so here. The closest it comes is with respect to member Shelton Riddick, who allegedly submitted a registration to attend USC-SJ II's annual meeting in early 2016, apparently confused about whether USC-SJ II was affiliated with Grand Orient. But on Grand Orient's own telling, no injury resulted from any confusion: Defendant USC-SJ II denied Riddick admission, explained that it was a separate organization, and returned Riddick's admission fee.

15

enforceable contract, *see United Supreme Council II*, 329 F. Supp. 3d at 291, and Grand Orient argues that this was in error because its constitution qualifies as an enforceable contract with its members.

Even assuming Grand Orient is correct that its constitution *could* create a valid contractual relationship, *see 24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 631 (4th Cir. 2016) (relying on Virginia precedent treating constitution of voluntary association as contract), the plaintiffs have not shown that it did so here. That is because it is uncontested that the constitution was created – along with, by definition, the contractual relationships it generated – during Grand Orient's period of administrative dissolution. The complaint alleges that the "[p]laintiffs maintain a contract with its members as evidenced by the Constitution," J.A. 134, and that said constitution "was created on or about October 8, 2012," *id.* at 94. And there is no dispute that Grand Orient was administratively dissolved on September 4, 2012, when its charter was revoked – *before* the constitution allegedly was created in October – and that it maintained its status as an inactive and dissolved corporation until its corporate identity was reinstated on September 28, 2016.[4] The correct question, then, is whether a contract entered into during a corporation's period of dissolution is valid – and if not, whether the D.C. Code's

---

[4] At oral argument, Grand Orient's counsel suggested that some of its constitution-based membership contracts may pre-date Grand Orient's administrative dissolution in September of 2012. But that suggestion runs contrary to the allegations of Grand Orient's own complaint, which identifies October of 2012 as the date on which the constitution was created. It also is unsupported by the record, which contains no evidence of a constitution – or membership contracts based on a constitution – prior to the September 2012 revocation of Grand Orient's corporate charter.

16

reinstatement provision can operate to retroactively validate such a contract now that Grand Orient has been reinstated.

The District of Columbia Court of Appeals' decision in *Accurate Construction Co. v. Washington*, 378 A.2d 681, 684 (D.C. 1977), makes clear that the answer to both questions is no. There, the court first held that a contract entered into during a period of administrative dissolution was void under District of Columbia law, because "the corporation lacked the capacity to contract when it did . . . . Upon the proclamation of revocation, the corporation was shorn of all its powers and rights, save those expressly reserved by the statute for the purpose of winding up its affairs . . . ." *Accurate Constr. Co.,* 378 A.2d at 684; *see also* 16A Fletcher Cyclopedia of the Law of Corporations § 8137 ("A conveyance of property by or to a corporation after its dissolution is invalid and unenforceable, unless the corporation is disposing of property for the purpose of winding up and liquidating its business and affairs.") (footnotes omitted). Entering into new membership contracts is not consistent with winding up affairs; in fact, efforts to grow an organization's membership would seem to indicate the opposite. Next, addressing whether reinstatement of the corporation operated to validate a prior act, the *Accurate* court held that it could not. *Id*. at 684–85. Revocation "is a disability imposed on a corporation as a penalty," the court reasoned, and that penalty would be rendered toothless if reinstatement "completely erase[d]" its effects. *Id.* at 685; *see also United Supreme Council II*, 329 F. Supp. 3d at 290 (raising same concern in context of standing analysis).

Because its administrative dissolution rendered void the contracts on which Grand Orient relies for its tortious interference claim, that claim cannot succeed as a matter of

17

law.  Accordingly, we affirm the district court's grant of summary judgment in favor of the defendants as to tortious interference.

3.

Finally, we affirm the district court's grant of summary judgment in favor of the USC-SJ II defendants as to the remaining claims of copyright infringement, trademark infringement, and unfair competition.  The district court held that Grand Orient conceded its claims of copyright infringement, unfair competition, and trademark infringement under Section 32 of the Lanham Act by failing to respond to USC-SJ II's summary judgment motion on those points.  *See United Supreme Council II*, 329 F. Supp. 3d at 292 ("Plaintiffs completely fail to address the copyright infringement issue in their Opposition."); *id.* at 293 ("Plaintiffs seem to abandon their Section 32 Lanham Act claim . . . ."); *id.* ("Plaintiffs did not address Defendants' summary judgment arguments about unfair competition."). On appeal, Grand Orient fails even to address that distinct basis for the district court's judgment against it.  *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (failure to raise issue in appellate brief waives that issue on appeal).  And in any event, after omitting from its response to USC-SJ II's summary judgment motion any argument on the claims of copyright infringement, unfair competition, and trademark infringement, Grand Orient cannot now raise those issues on appeal.  *See also Cox v. SNAP, Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017) (issue ignored at summary judgment may be deemed waived).

We also agree with the district court that Grand Orient was not entitled to press a claim under Section 43 of the Lanham Act because it failed to allege that claim in its

18

amended complaint. As the district court explained, Grand Orient's complaint cannot reasonably be read to assert a claim under Section 43 of the Lanham Act: Count I of the amended complaint, to which Grand Orient points, alleges unfair competition under Virginia common law, not trademark infringement under the Lanham Act; and Count X of the complaint, which *is* about trademark infringement, is limited by its terms to Section 32 of the Lanham Act, and makes no mention of Section 43. *United Supreme Council II*, 329 F. Supp. 3d at 293. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy," *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013), and Grand Orient was not entitled to raise for the first time at summary judgment a claim that it failed to assert in its complaint.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

19