**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-1730**

_____

ANNAKUTTY JOSEPH,

Plaintiff − Appellant,

v.

TARGET STORES, INC., a/k/a Target Corporation,

Defendant – Appellee.

------------------------------

VIRGINIA TRIAL LAWYERS ASSOCIATION,

Amicus Supporting Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:19−cv−00614−CMH−IDD)

_____

Argued:  March 8, 2023                    Decided:  April 12, 2023

_____

Before KING, DIAZ, and QUATTLEBAUM, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge King and Judge Quattlebaum joined.

_____

**ARGUED:**  Kevin Michael Leach, TURBITT LEACH & CRUM, PLLC, Burke, Virginia, for Appellant.  John D. McGavin, MCGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C., Fairfax, Virginia, for Appellee.  **ON BRIEF:**  Anna G. Zick, BANCROFT,

MCGAVIN, HORVATH & JUDKINS P.C., Fairfax, Virginia, for Appellee.  Mary Lynn Tate, TATE LAW PC, Abingdon, Virginia; Roger T. Creager, THE CREAGER LAW FIRM, PLLC, Richmond, Virginia, for Amicus Curiae.

———————————

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

While walking through a Target store in Gainesville, Virginia, Annakutty Joseph slipped and fell on a puddle apparently formed in a store aisle by rainwater dripping from the ceiling. Joseph sued Target for negligence, and the district court granted summary judgment for Target. Because Joseph didn't present sufficient evidence that Target had constructive knowledge of the puddle, we affirm.

I.

A.

It rained heavily in Gainesville on the morning of May 21, 2016. Around 1:20 p.m. that day, Joseph slipped and fell on a puddle of water in aisle W27 of the Gainesville Target store, injuring herself. At the time, Joseph—an "Event Facilitator" who helped conduct product demos at the store—was headed to the back storage area to get cups and utensils.[1] J.A. 435–36. Joseph "was not in a hurry and was looking where [she] was going," but saw "no indication that there was water in the aisle" because the puddle was "transparent and clear on the white floor." J.A. 436. According to Joseph, the puddle was large: at least two feet wide and six or seven feet long.

---

[1] Joseph is not a Target employee, and below, Target didn't dispute her characterization as an invitee. Though Target's counsel suggested for the first time at oral argument that Joseph may have been a "bare licensee," we consider that argument waived. *See Kadel v. N.C. State Health Plan*, 12 F.4th 422, 430–31 (4th Cir. 2021) (given litigant's "silence on the issue below, the district court had no reason to understand it as anything but undisputed").

Craig Shipman, a Target employee, heard Joseph fall and came over to help her. Shipman later wrote in a guest-incident report that he saw "water leaking from ceiling – formed a puddle." J.A. 429. Kristina Centanni, the store's day manager, wrote in the incident report that "rain had leaked through roof & began dripping on ground." J.A. 428. She noted that the "leak [was] discovered" when Joseph slipped, and that it was "[n]ot easy to see water." *Id*. Centanni also testified that "everybody" working in the area was responsible for making sure the floors were "clean and appropriate," but that the store didn't keep records of its floor inspections. J.A. 376.

## B.

Joseph sued Target in Virginia state court, alleging that the company negligently failed to maintain its premises in a safe condition. Target removed the action to federal court.

Joseph hired David Hawn, a roofing consultant, to offer an expert opinion on how the puddle formed. Relying on a "[p]ersonal inspection" of the roof, the incident report, and other discovery materials, Hawn concluded that "the cause for the leak . . . was more likely than not an open panel door" on a rooftop [heating, ventilation, and air conditioning (HVAC)] unit located directly above aisle W27. J.A. 557, 559. Hawn explained that the open door would have allowed rainwater into the HVAC's interior, which "would then have leaked into the store interior and formed a puddle on aisle w27." J.A. 559.

Subsequent discovery revealed that a Target employee, Mac Campbell, had worked on the HVAC unit about two weeks before Joseph's fall. In a declaration, Campbell said that he didn't think he left any doors open on the HVAC unit, and that it was "very unlikely

4

that [he] could mistakenly leave a door partially open given the way the doors close and latch." J.A. 347. He also noted that when he inspected the roof a few days after Joseph's fall, none of the HVAC doors were open. J.A. 348.

Target moved for summary judgment, arguing that Joseph's main theory of the case—that an open HVAC door had created the puddle—was speculative. But even if the HVAC door had been open, Target contended, Joseph couldn't prove that the puddle existed long enough to give the store constructive knowledge of it. Target also argued that in any case, Joseph's own negligence in failing to spot the large puddle barred her recovery.

The district court agreed on all fronts. Though Joseph characterized Hawn's opinion as "evidence," the court found it "apparent that Hawn is only speculating that the [HVAC] door may have been left open." *Joseph v. Target Stores, Inc.*, No. 1:19-CV-614, 2020 WL 3549181, at *2 (E.D. Va. June 30, 2020). But even "assuming Hawn is correct that the roof hatch was open," the court held that there was "still no evidence as to how long the water took to saturate and leak through the ceiling tiles and form the puddle on the floor of aisle 27"—the "dispositive issue" in the case. *Id*. And the court agreed that while there was "some evidence in the record that the puddle was difficult to see," Joseph was contributorily negligent for failing to avoid an "open and obvious" hazard. *Id.* at *3.

Joseph timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.


II.

We review a district court's grant of summary judgment de novo, viewing the facts and reasonable inferences drawn from them in the light most favorable to the nonmoving

party. *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018). Summary judgment is appropriate only when there is no genuine issue as to any material fact—that is, if a reasonable jury couldn't return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it's entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). They can do this in one of two ways: (1) by offering evidence that negates an essential element of the nonmoving party's claim, *Adickes v. Kress Co.*, 398 U.S. 144, 158 (1970); or (2) by showing that the nonmoving party lacks evidence to carry its burden of persuasion at trial, *Celotex*, 477 U.S. at 322–23.

Once the motion is properly supported under either *Adickes* or *Celotex*, the burden shifts to the nonmoving party to show that a genuine dispute of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-movant's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

We recap this hornbook law on summary judgment because Joseph contends that the movant "must not leave a gap in the evidence and must 'foreclose the possibility' that an issue of fact exists for trial." Appellant's Br. at 17. She argues that because Target failed to "foreclose the possibility" that a door on the HVAC unit was left open, the store didn't carry its initial burden under *Adickes*. *Id*. at 19.

6

But Target's motion for summary judgment took the *Celotex* route, arguing that Joseph didn't have evidence to prove that Target had constructive knowledge of the puddle. And where the movant points out that "there is an absence of evidence to support the nonmoving party's case," they need not also "produce evidence showing the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 325.

## A.

"Because this is a diversity case, Virginia law governs the parties' duties and responsibilities." *Goehler v. Wal-Mart Stores, Inc.*, 229 F.3d 1142 (4th Cir. 2000) (per curiam) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The rules applicable to Virginia slip-and-fall cases are "well settled." *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990). A store owes its invitees a duty to maintain the premises in a "reasonably safe condition," including by removing hazards from the floor "within a reasonable time." *Colonial Stores Inc. v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962). To establish prima facie liability, the plaintiff must "introduce evidence of the responsible person's actual or constructive knowledge of a defective condition." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 889 (Va. 1993).

Joseph doesn't contest that Target lacked actual knowledge of the puddle. Rather, she offers three theories to establish the store's constructive knowledge of it: (1) Target's employee created the hazard by leaving an HVAC door open; (2) large puddles of water formed by drips take time to accumulate; and (3) Target's history of roof leaks created a recurring hazard. We'll discuss each in turn.

7

1.

First, Joseph says that we may impute constructive knowledge to Target because the puddle was caused by a Target employee (Campbell) who left an HVAC door open. Joseph cites a line of cases noting that constructive knowledge is established where "a premises owner affirmatively creates a dangerous condition" and the resulting hazard is "reasonably foreseeable." *Thomas v. Omni Hotels Mgmt. Corp.*, 742 F. App'x 729, 734 (4th Cir. 2018); *see Austin v. Shoney's, Inc.*, 486 S.E.2d 285 (Va. 1997); *Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228 (Va. 1986).

The district court addressed this theory only obliquely, noting that Hawn—the expert who determined that an open HVAC door was the likely culprit—was "only speculating." *Joseph*, 2020 WL 3549181, at *2. On appeal, Target argues that Hawn's "speculation . . . does not create a genuine dispute of fact," and that in any case, it's "not foreseeable that an open HVAC compartment door would cause a puddle on aisle 27." Appellee's Br. at 24.

We agree with Joseph that the district court unfairly discounted Hawn's expert report. *See Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 764 (4th Cir. 2021) (crediting an expert report on stair conditions as containing "more than conclusory allegations"). Hawn's report pointed to "specific, material facts" on a likely cause of the leak, *see id*. at 764: There was an HVAC unit directly above aisle W27; Campbell performed maintenance on it two weeks before the incident; and the HVAC manual required him to open the door and check the inside of the unit, including for "signs of water infiltration." J.A. 559. And while Campbell denied leaving the door open, he admitted

8

that "[g]iven the time elapsed," he didn't "specifically recall" that day.  J.A. 347.  Viewed in the light most favorable to Joseph, these facts could allow a jury to find that the open HVAC door led to the leak.

But we disagree with Joseph that this chain of events was reasonably foreseeable. In Joseph's cited cases, the nexus between action and hazard was closer: A store actively moved plants known to shed their slippery leaves when jostled, for example, or an employee created a "grease-like film" by mopping the floor.  *See Memco Stores*, 348 S.E.2d at 230; *Shoney's*, 486 S.E.2d at 287.  By contrast, we've found that ice on a walkway—allegedly formed by water escaping from a hotel fountain—wasn't reasonably foreseeable where employees testified "they had never observed the fountain causing splashes, condensation, or moisture on the surrounding walkway, nor received complaints of water or ice on the walkway." *Omni Hotels*, 742 F. App'x at 734.

This case is closer to *Omni Hotels* than to *Memco Stores* or *Shoney's*.  Campbell didn't directly create the puddle—at most, he left open a rooftop panel that allowed rainwater to seep in weeks later.  And there's no evidence that an open HVAC door had ever caused a roof leak at this Target before.  So while accepting Joseph's version of events, it still wasn't reasonably foreseeable that negligent HVAC maintenance would lead to a puddle in aisle W27.

## 2.

Even if a store doesn't affirmatively create a dangerous condition, a plaintiff can establish constructive knowledge by proving that the hazard "had been there long enough that the defendant ought to have known of its presence." *Colonial Stores*, 125 S.E.2d at

9

190.  In that case, summary judgment for the defendant is proper when "the evidence fails to show *when* a defect occurred on the premises."  *Grim*, 434 S.E.2d at 890.

Joseph argues we can infer the puddle had been on the floor long enough because it would take significant time to "create a two foot by seven foot puddle by drips." Appellant's Br. at 39 (cleaned up).  Target responds that there's "no evidence to demonstrate when the water began to fall from the ceiling to the floor" and "no reliable way to estimate when the puddle was formed."  Appellee's Br. at 21.  The district court agreed with Target, finding that Joseph offered no evidence to prove when the puddle started to form.

Virginia's strict case law in this area dooms Joseph's argument.  Virginia doesn't "permit juries to speculate upon how long a foreign substance had been on the floor"—a plaintiff must offer evidence on that point.  *Great Atl. & Pac. Tea Co. v. Berry*, 128 S.E.2d 311, 313–14 (Va. 1962).  So a plaintiff won't win when it's "just as probable that [a floor hazard] had been there for a short period of time as for a lengthy period."  *Id*. at 313.

Joseph concedes that there's no evidence showing when water started hitting the floor.  But she asks us to infer from the puddle's large size—and the fact that it had rained in the morning—that rainwater must have been leaking slowly from the ceiling for some time, so Target would have discovered the puddle had it looked.  Under Virginia law, however, a "chain of inferences" isn't sufficient to demonstrate how long a hazard existed. *Omni Hotels*, 742 F. App'x at 733.

In *Omni Hotels*, for example, the plaintiff argued that "ice takes time to form and this ice appeared thick approximately thirty minutes after [the] fall."  *Id*.  And in *Logan v.*

10

*Boddie-Noell Enterprises, Inc.*, the plaintiff pointed to the "large quantity and area of the water, suggesting that the water must have accumulated over a significant period of time." No. 4:11-cv-00008, 2012 WL 135284, at *8 (W.D. Va. Jan. 18, 2012). The courts rejected the plaintiffs' theories in both cases, finding that they rested on mere speculation.

Joseph's evidence likewise falls short. There's no evidence in the record to establish when the water permeated the ceiling tiles and began forming the puddle. The ceiling could have been dripping slowly for hours—or the tile could have given way and dripped substantial amounts of water just before Joseph fell. The jury could reach a conclusion either way "only by impermissible speculation and conjecture." *Omni Hotels*, 742 F. App'x at 733 (cleaned up).

3.

Finally, Joseph argues that "a jury could also find the puddle was caused by the recurring danger of a poorly maintained roof," and that this "recurring danger" was sufficient to charge Target with constructive knowledge. Appellant's Br. at 30. Joseph didn't advance this theory at summary judgment, so the district court didn't rule on it. *See Joseph*, 2020 WL 3549181, at *1 ("Plaintiff originally pursued the case under the theory that Defendant was aware that the building's roof had a history of leaking but having found no evidence supporting that theory, now argues" that Campbell left the HVAC unit open). We therefore deem the argument waived and decline to consider it. *See Cox v. SNAP, Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." (cleaned up)).

11

III.

In all, Joseph hasn't established Target's constructive knowledge of the puddle—whether by the store's allegedly negligent HVAC maintenance or inferences about the size and formation of the puddle.[2]  The district court's judgment is therefore

*AFFIRMED.*

---

[2] As a result, we don't reach the district court's holding that Joseph was contributorily negligent.